(Court of Common Pleas, Summit Co.)
October Term, 1897.

DAVID WELTY, ADMINISTRATOR v. CATHERINE WISE. et al.

When a party holds a lease for all the coal underlying the land of another, so long as coal is found in paying quantities, and the holder of said lease fails for eleven years to work said mine, and the openings to said mine cave in, the lessor and those claiming under him have a right to assume that said lease has been abandoned. And in an action by the lessor's administrator, to sell said land to pay the debts of the deceased lessor, the court will order said land sold free from any incumbrance of said lease.

---

NYE, J.

This case comes into this court upon appeal from the probate court. The action in the probate court was an action by the plaintiff, David Welty, as administrator of John Wise, to sell certain land, and the heirs and one Joseph Heckman, are made parties defendant. Substantially the only controversy in this case is with reference to the claim made by Joseph Heckman.

Joseph Heckman claims that on May 10th, 1866 the decedent, John Wise, made and executed to Elias Heckman, a lease of the coal interests in his farm, for an indefinite period, and he sets forth in his answer a copy of this lease or license as one of the parties call it, and one of the contentions here is, that this was a license by the plaintiff to defendant; one of the parties claiming that it is a lease, and the other claiming that it is a license, and they spent considerable time in the discussion of the law pertaining to licenses and leases.

I am not going to decide this case upon the distinction made by counsel as to whether it is a license, or whether it is a lease.

The only question in this case that is in controversy is whether Joseph Heckman has a lien upon this property, or whether he has not. This is the paper which the controversy is about:

"May 10th, 1866.

This article of agreement made and entered into by and between John Wise of the first part and Elias Heckman of the second part, witnesseth:

"That said John Wise doth hereby lease and let unto the said party of the second part the land and tenements situated in the township of Green, section twenty-four, county of Summit and state of Ohio, consisting of one hundred acres, for the following considerations:

"That said second party shall have the full right and liberty to enter upon, dig, bore, mine and make all necessary excavations upon any and all portions of said lands and tenements and then and there to erect any and all buildings, machinery and fixtures, and do any and all acts upon said premises which said party of the second part deem necessary for the successful prosecution of the above specified business in any and all of its branches.

"And the said party of the second part doth hereby agree to pay seventeen cents per ton for lump coal and six cents per ton for slack yearly so long as there is no railroad within one-half mile of the aforesaid premises. But so soon as there is a railroad built within one-half mile, the party of the second part agree to pay twenty-two cents per ton.

"Also if coal is mined by said party, their heirs or assigns, this lease to be good as long as there remains coal unmined.

"Said party of the second part also agrees to incur all the expenses of labor, materials, and machinery necessary for the prosecution of said above specified business. And it is mutually agreed between the said parties, that the aforesaid premises shall be used and occupied by the said party of the second part, for the purposes above specified, with as little damage to the surface of said premises as will be consistent with the interest of said party of second part, and also, that the said party of the first part shall have the right to enter upon said premises, and to use and occupy the same during the continuance of this lease for every and all purposes not inconsistent with the rights herein granted to the party of the second part. Also that the party of

the second part agrees not to mine coal within five rods of any of the buildings on aforesaid premises.

"In witness whereof, we have here unto set our hands and seals this 19 day of May, 1866.

"Witnesses,
"H. G. Johnson,            John Wise, Seal.
"Alexander Johnson.
                    Elias Heckman, Seal.
"The State of Ohio
"Summit county.            May 19, 1866.

"Personally appeared John Wise and Elias Heckman who acknowledged that they did sign and seal the foregoing lease and that the same is their free act and deed. Alexander Johnson, Justice of Peace."

The proof in this case shows that Elias Heckman got this lease in 1866; that he opened up this mine and worked it until May 1875; that Mr. Elias Heckman at that time became financially embarrassed. He was indebted to his brother, Joseph Heckman, in the sum of fifteen hundred dollars, and it was agreed, that this lease should be assigned to Joseph Heckman for the consideration of one thousand dollars.

The proof shows that Elias Heckman put into the coal mine about five thousand dollars; he got out of it about three thousand dollars, that it was to him a losing concern from the time he opened it until he quit. The proof then shows further that Joseph Heckman ran this coal mine from 1875 until 1886, and proof was given as to the amount of money that he paid royalties to Mr. Wise. The undisputed testimony in the case shows that from 1886 to the present time, no coal has been taken out of the mine; there was one opening upon one side of the hill and another upon the other and a way clear through the hill, both of those openings have caved in, the ground has fallen down where the coal was taken out, so that it has left a cavity or depression upon the top; that nothing further has been done in this matter since 1886, a period of eleven years.

In Ohio we have not very many authorities upon this question of, leases for minerals. The only case that I have been able to find is one decided by the circuit court of the fifth circuit, (The Ohio Oil Co. v. Hurlburt et al., 14 C. C. 144) Judge King delivered the opinion, in which, the syllabus of the case is this:

"Where a land-owner gives a lease for all the oil and gas under his land, the lease providing that the lessee should pay $160 a year for every year he failed to operate under the lease, without other provisions as to forfeiture, it is the duty of the lessee not to delay the development and operations under the lease for any unreasonable length of time, and if there is unreasonable delay, the lessor may insist that the lessee either sink oil wells, or abandon the premises, notwith-

standing the payment of $160 every year. But if the lessor fails to avail himself of such unreasonable delay to forfeit the lease until after the lessee has again, with his consent, commenced operations and sunk wells on the land, the right of the lessor to insist on a forfeiture for the previous unreasonable delay, is waived."

There is a West Virginia case found in the 18th South Eastern Reporter, 493, and I read from the syllabus of the case, "Where a lease is executed to a party of all coal, timber, and mineral privileges on a certain tract of land, for the term of 99 years, thence ensuing, the lessee agreeing to pay 10 cents per ton for the coal mined and shipped therefrom, and for all such timber as said lessee may think merchantable, which may be cut, shipped, sawed, or moved from said leased premises, 50 cents per 1,000 square feet of lumber of inch thickness, and a proportionate sum for other thicknesses, or 25 cents per tree, at the discretion of said lessees or their assigns, no time being fixed for the commencement of operations, the lessor has a right to presume that said operations will be commenced in a reasonable time.

"2. If nothing has been done under said contract for the period of 17 years from the date of the contract, the lessor has a right to presume the contract has been abandoned, and said lessee or his assigns cannot after having been guilty of such laches, restrain said lessor from cutting and using the timber on said land by enjoining him from cutting and removing the same."

Farther on in this case, in the decision of the court, on page 497, the judge deciding the case says: "In making this agreement to lease the coal mentioned therein, and to let the lessor have the timber to aid in its safe and economic mining, it is presumed that said David Bell expected to receive some returns in the shape of royalty during his natural lifetime; and, although the agreement provides that the lease is to continue for 99 years, the law contemplates that operations shall be commenced in a reasonable time, in order that the lessor may enjoy his royalty, and the lessee the coal."

And in this last cited case the court cites a case in the 83 Va. 409, found in the 2 S. E. R. 713, in which that court says: "The lease was for a term of twenty years. Yet, looking to its nature and object, it cannot be contended that the lessees had the option to work or not to work the ore mines for an indefinite time, and thus convert what was designed to yield a handsome daily income to the lessors into a mere barren incumberance on his land—a cloud on his title, an incubus and a manacle which would oppress him and destroy the marketable value of his land."

Now, I am of the opinion that it was

the fair contemplation of the parties to this lease in question that this mine should be worked, and that the lessor should have the revenues from it, and when it ceased to be worked for an indefinite length of time, or for a long time, Mr. Wise had a right to presume that the lessee had abandoned it; and I think the proof clearly shows that this lease has been abandoned, and that this land ought not to be encumbered by a barren lease without any equity or right upon the part of the lessor or his heirs to have it declared forfeited.

I think justice requires in this case that this lessee or the assignee of this lease should either work the mine or abandon it, and it having been abandoned for the period of eleven years, without any attempt to work it, I think that this land should be sold free from any incumbrance of this lease.

The order may be taken to sell this land free and unincumbered from this lease, to pay the debts of the decedent.